WALTER L. TINDALL, JR., and MARGARET TINDALL, his wife, AUGUSTIN J. DAUPHIN and MARY V. DAUPHIN, his wife, WILFORD L. FLETCHER and LOUISE W. FLETCHER, his wife, ARTHUR G. GUY and ANNE M. GUY, his wife, and ANNA W. CULVER,
Plaintiffs,

*vs.*

JOSEPH A. CORBI and ROSALIND G. CORBI, his wife, THOMAS S. MERTES and VICTORINE S. MERTES, his wife,
Defendants.

*Sussex—September 22, 1958.*

*Daniel J. Layton, Jr.,* Georgetown, for plaintiffs.

*Jackson W. Raysor,* of Tunnell & Raysor, Georgetown, for defendants.

SEITZ, Chancellor: The defendants, Joseph A. Corbi and wife, and Thomas S. Mertes and wife, in 1949 purchased land in Dewey Beach approximately 150 feet in width running westerly from King Charles Highway to Rehoboth Bay. The defendants each separately purchased one-half of the tract. They then constructed a twelve-foot dirt road astride their common boundary line from the Highway to a point which is in dispute. One of the defendants then erected a cottage on the land nearest the beach. Later the other defendant also erected a cottage in a similar position.

The defendants, without a survey, set off their land into lots and advertised them for sale. In July 1950, defendant, Corbi sold one of the lots between his cottage and the highway to the plaintiffs, Walter and Margaret Tindall. The Tindalls completed construction on their lot during the winter of 1952. In 1951, defendant, Mertes, sold one of his lots to the plaintiffs, Arthur and Anne Guy. This cottage was completed during the summer of 1952. In March 1952, the Guys purchased an additional one-half lot at the time the Culvers (not parties) purchased one and one-half lots from the defendant, Mertes. In April 1952, Augustin and Mary Dauphin purchased a lot from Corbi. While in May 1954, Corbi sold a lot to plaintiffs, Wilford and Louise Fletcher. Cottages were erected on the lots. During this period the beach was very narrow. Later it was filled in to a great extent.

Apparently some time in 1954, a dispute developed between plaintiffs and the defendants with respect to the contribution of money for the expense of draining the private road. As a consequence, the defendants by erecting various obstacles indicated that plaintiffs could no longer traverse defendants' lands to gain access to Rehoboth Bay. Prior to that time, the plaintiffs, or some of them, had freely used the defendants' land to reach the beach and Bay. The situation worsened and finally this action was begun in 1957.

Plaintiffs seek to have the defendants enjoined from interfering with plaintiffs' right to use the twelve-foot private road which abuts their properties and which they claim extends through the properties of the defendants to the beach of Rehoboth Bay. Defendants deny

that plaintiffs have any easement beyond the eastern boundary of their properties.

This is the decision after final hearing.

While plaintiffs advance several theories in support of their claim to relief, I think it necessary to consider only one.

Plaintiffs purchased their properties with the intention of erecting summer residence cottages thereon. I am satisfied that they chose this particular location because of its proximity to Rehoboth Bay and the consequent ease in launching boats and otherwise gaining access to the beach and Bay. There was much testimony as to the representations made by the defendants to the plaintiffs in connection with the sale of the lots. However, defendants argue vigorously that such evidence is inadmissible. In my view in this matter it is not necessary to pass upon defendants' objection.

When defendants sold the lots along the private road to the various plaintiffs the deed descriptions contained no grant of an express right to use the private road. However, the private road was used as a boundary description in each deed. Under these circumstances, plaintiffs clearly were by implication given an easement to use the road. See 2 *Thompson on Real Property* (permanent edition) § 471; *Betley v. Gordy Construction Co.*, 35 *Del.Ch.* 253, 115 *A.2d* 475.

Since plaintiffs have the right to use the private road, the question then is as to the limits of that road. There was no recorded plot used by defendants in selling plaintiffs their lots. Nor was there any description in the deeds which set forth the limits of the private road. Under these conditions the limits of the road must be determined by the court on the basis of the physical appearance of the road during the period when the plaintiffs were purchasing their properties. And other pertinent surrounding circumstances may be considered.

There is real testimonial dispute as to how far toward the beach the private road extended. Defendants say it did not extend

beyond the eastern boundary of their properties; their eastern boundary being farthest from the Bay. This would mean in effect that the private road "dead-ended" at defendants' property lines. Plaintiffs' testimony tended to show that at the crucial time the road, though broadening after it reached defendants' properties, continued between the two properties to a point approximately parallel to the westerly side of defendants' structures and at a point where the sand of the beach began.

Based upon the credible testimony and my view of the area, and with due regard to lapse of time, I conclude that the private road during the crucial period appeared to extend beyond the eastern boundary of defendants' properties to a point where the beach began, using the term "beach" loosely. In other words, I am satisfied that the road appeared to the reasonable person to be open from King Charles Highway to the edge of the beach. Also, considering the type of properties and their physical location (summer cottages) and the appearance of the road, I am satisfied that the easement embraced the right to use the beach to reach the water. This right is reasonably necessary if plaintiffs are fully to enjoy the easement in the road under the circumstances. It is therefore embraced within the easement. Compare *Anderson v. DeVries, 326 Mass. 127, 93 N.E.2d 251; Richard Paul Inc., v. Union Improvement Co. 33 Del.Ch. 113, 91 A.2d 49.*

Defendants point to a blueprint which they had made which showed the private road extending only to the easterly boundary of their properties. But this blueprint or a tracing thereof, according to defendant, was shown only to one of the plaintiffs. It could not bind the others. It is, in any event, far from decisive under the circumstances of this case. Defendants also point out that there are other private roads near by which dead-end in the manner here claimed. Taking this to be so, the plaintiffs are bound only by their deeds as reasonably construed. It should be noted, though I have not emphasized it, that these defendants permitted plaintiffs to use the road on their properties to reach the beach until difficulties arose over the drainage problem, in 1954. This could be considered as a practical

construction of the easement contemplated by the deeds and a further reason to support the court's conclusion.

A permanent injunction will therefore issue restraining the defendants from obstructing plaintiffs' easement over the twelve foot wide private road; which private road is deemed to extend to the edge of the beach. Defendants will further be restrained from interfering with plaintiffs' use of the beach for the purpose of launching boats, etc.

I have, of course, only ruled upon pertinent matters which have been briefed.

Present order on notice.